UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDRA PERINO and SUSAN LEITAO<br><br>*Plaintiffs*<br><br>v.<br><br>ZWICKER & ASSOCIATES, P.C. and MASSACHUSETTS EDUCATIONAL FINANCING AUTHORITY<br><br>*Defendants* | C.A. NO:<br><br>**VERIFIED COMPLAINT AND JURY TRIAL DEMAND** |

## NATURE OF THE CASE

1. Alexandra Perino and Susan Leitao bring this suit against defendants Zwicker & Associates, P.C. and Massachusetts Educational Financing Authority for violations of the Federal Debt Collection Practices Act, 15 U.S.C §§ 1692, *et seq.* and violations of Massachusetts debt collection laws and regulations, G.L. c. 93, § 49, 940 C.M.R. 7.00, *et seq.* and 209 C.M.R. 18.00, *et seq.*

## JURISDICTION AND VENUE

2. The Court has original jurisdiction over this action as the claim involves questions of federal law.

3. The Court is authorized, pursuant to 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the included state law claims, as these claims are part of the same case or controversy.

1

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claim occurred in Massachusetts, and all parties are citizens of Massachusetts.

## PARTIES

5. Plaintiff Alexandra Perino ("Perino") is a natural person residing at 26 Liberty Bell Circle, East Weymouth, Massachusetts.

6. Plaintiff Susan Leitao ("Leitao") is a natural person residing at 56 North Harriette Street, Randolph, Massachusetts. Leitao is Perino's aunt.

7. Defendant Zwicker & Associates, P.C. ("Zwicker") is a professional corporation organized in Massachusetts, operating as a law firm with its primary business focus on debt collection, with its principal office at 80 Minuteman Road, Andover, Massachusetts.

8. Defendant Massachusetts Educational Financing Authority is a state-chartered nonprofit private student loan lender, with a principal place of business at 60 State Street, Suite 900, Boston, Massachusetts.

## COMMON FACTS

9. On or about February 14, 2019, Perino received several pieces of mail at her home, sent by Zwicker but addressed to Leitao.

10. Leitao does not live with Perino, but was present at Perino's home when the letters from Zwicker were delivered and opened them in Perino's presence.

11. Perino called Zwicker to inquire as to whether the collection letters involved accounts for which Perino herself was also obligated, and to try to arrange a payment plan.

12. Perino spoke with Zwicker employee Jessica Caverly ("Caverly"), asked about the accounts, and explained that she had just set up a payment plan for her federal student loans and was interested in doing the same with her private student loans.

13. Caverly informed her that she had six MEFA accounts in default that had been placed with Zwicker for collection, that Zwicker intended to file a lawsuit unless she made payment, and that she was not eligible for any repayment plans.

14. Caverly told Perino that she owed $164,611.22 and offered to accept an immediate lump-sum payment of $120,000 to settle the accounts.

15. When Perino said she could not pay $120,000, Caverly asked her to make a $33,000 lump sum payment followed by 24 monthly payments of $5,487/month – an amount which Perino explained was entirely unaffordable.

16. In fact, Perino only has four MEFA accounts in default and assigned to Zwicker, and the total amount owed is significantly lower than what Zwicker represented.

17. Caverly applied high pressure tactics to collect, threatening a lawsuit and repeatedly insisting that Perino contact family members and friends to ask for money to make the requested payments – specifically that she contact Lucy Leitao

and Joseph Perino, Perino's grandmother and father, who Caverly claimed were co-obligors on Perino's loans.

18. Leitao, who was present when Perino called Zwicker on speaker, heard the entire discussion and felt deceived, because she and Perino believed that Perino was contacting a lawyer to discuss her accounts, and they later learned that Caverly was not a lawyer at all.

19. Leitao described Zwicker's collection tactics as "cutthroat" and said Caverly put intense pressure on Perino make payments that Caverly knew Perino couldn't afford and insisted this was the only option, and further pressured her to contact family members or friends to ask to borrow large sums of money.

20. Even though Perino had only called to get information about what loans she had and what payment plans could be made, Zwicker's high pressure tactics left her so stressed and fearful that she agreed to authorize an $8,000 electronic transfer from her bank account, without even getting to review any documentation of the purported debt.

21. Caverly processed an $8,000 payment by telephone, which she represented would be equally applied across Perino's outstanding accounts.

22. Perino's $8,000 payment was subsequently electronically transferred from Perino's bank account to Zwicker. (**Ex. A**)

23. Although Caverly promised to mail Perino a receipt for the $8,000 payment along with information about the purported debts, Perino never received a receipt or any written documentation of her loans, did not receive any further

correspondence from Zwicker until two months later, when she was served a summons and complaint at her home.

24.     On or about April 11, 2018, MEFA, through its attorney, Zwicker, filed suit against Perino and Leitao in Norfolk Superior Court, docket number 1982CV00492 (**Ex. B**).

25.     The complaint alleged that Perino and Leitao owed $42,550.70 on a student loan account, for which Perino was alleged to be the primary borrower and Leitao a co-signor.

26.     The complaint stated that despite demand, as of April 11, 2019, Perino and Leitao had failed to make any payment on the outstanding balance – even though Perino had paid $8,000 two months earlier.

27.     Zwicker attached a Borrower History and Activity Report as an exhibit to the complaint, which also showed that no payments had been made on the loan, even though Perino had paid $8,000 and Zwicker had represented that the payment would be evenly distributed across Perino's loans.

28.     Perino and Leitao were forced to retain an attorney to defend in the lawsuit.

29.     Through counsel, Perino and Leitao sent discovery requests to MEFA, requesting, inter alia, documentation of all payments made to the account.

30.     Zwicker sent responses on behalf of MEFA, stating in the response to interrogatories that Zwicker had received a payment of $2,000 on February 15, 2019. (**Ex. C**)

31. Zwicker did not provide any information or accounting of the remaining $6,000 that Perino had paid.

32. The documents that Zwicker produced on behalf of MEFA in response to Perino and Leitao's discovery requests did not reflect that any payments were applied to the loan in February 2019 or anytime thereafter.

33. At all relevant times, Zwicker acted as MEFA's attorney and authorized agent with respect to Zwicker's debt collection activities.

## COUNT I:
## UNFAIR DEBT COLLECTION
## 15 U.S.C. §§ 1692, *et seq.*
(Zwicker)

34. The preceding allegations are hereby incorporated by reference.

35. Perino and Leitao are "consumers" and the account is a "debt" as defined by the Federal Debt Collection Practices Act, ("FDCPA") 15 U.S.C. § 1692a.

36. Zwicker is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a. *Heintz* v. *Jenkins*, 514 U.S. 291 (1995).

37. The FDCPA prohibits debt collectors from using false, deceptive, or misleading representations or means in connection with the collection of any debt. 15 U.S.C. § 1692e.

38. False, deceptive or misleading representations include any false representation of the character, amount, or status of any debt. 15 U.S.C. § 1692(e)(2)(A).

39. By falsely stating that Perino owed $164,611.22 to MEFA and had six loans in default, Zwicker made false, deceptive and misleading representations

about the amount and status of the debt, in violation of the FDCPA, 15 U.S.C. § 1692(e)(2)(A).

40. Zwicker further violated the FDCPA, 15 U.S.C. § 1692(e)(10) by falsely claiming that Perino's father, Joseph Perino and grandmother, Lucy Leitao were also obligated on Perino's loans as co-signors in order to pressure Perino to call her family members and ask them to make large payments on her behalf.

41. By filing a complaint that stated that Perino and Leitao owed $42,550.70 and had made no payments on the account, even though Perino had paid Zwicker $8,000 two months earlier on the account, Zwicker made false representations about the character, amount and status of the debt, in violation of the FDCPA, 15 U.S.C. § 1692(e)(2)(A). *McDermott* v. *Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1 (D. Mass. 2012).

42. Despite stating in later discovery responses that Zwicker had received a $2,000 payment on the account, Zwicker made no effort to correct its false representations, and did not amend the complaint.

43. Perino and Leitao have suffered damages as a result of Zwicker's violations.

44. Perino was forced to retain counsel and incur attorney fees and costs to defend herself and Leitao against MEFA's lawsuit.

45. After giving all of her available cash to Zwicker as a result of Zwicker's high-pressure and deceptive tactics, Perino was forced to find a third job as a waitress in order to pay her other obligations.

46. Perino and Leitao have both suffered frustration and confusion, as they believed that the $8,000 payment Perino made in February was to prevent a lawsuit from being filed, yet both were sued anyway, and the $8,000 was neither credited to the purported debt nor returned.

47. Perino has experienced significant emotional distress, including embarrassment, guilt, and shame at having to explain the situation to family members who aren't even obligated on the loans, for fear that they would be contacted directly by Zwicker or sued.

48. Perino has experienced significant fear, stress and an overwhelming feeling of hopelessness about the future, and even contemplated selling her car, out of fear that she could no longer afford to own a car. She stopped going out socially and worried about how Zwicker's aggressive collection activity would impact her relationship with her family and her long-term, seven-year relationship with her boyfriend, as the two had begun planning their future together and were saving to buy a home together.

49. The ongoing stress caused by Zwicker's actions has caused Perino to be consumed by worry about her future, constantly anxious and fearful of answering the phone, has caused episodes of anxiety and crying, has caused a significant increase in her psoriasis flares, and has caused her to be preoccupied and distracted at her job as a nurse.

50. Both Perino and Leitao have experienced concern and worry about the potential that Zwicker could contact other family members with the same deceptive, high-pressure tactics.

### COUNT II
### UNFAIR DEBT COLLECTION
### G.L. c. 93, § 49
(MEFA, Zwicker)

51. The preceding allegations are hereby incorporated by reference.

52. Massachusetts law prohibits creditors and their representatives from collecting debts in an unfair manner pursuant to G.L. c. 93, § 49, which states as follows:

> No one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.

53. MEFA is a "creditor" as defined by G.L. c. 93, § 24.

54. Zwicker is a "debt collector" as defined by G.L. c. 93, § 24.

55. Perino and Leitao are consumers, as defined by G.L. c. 93, § 24, as the loan in question was taken for household or personal use, and the account is a "debt" as defined by the statute.

56. Defendants collected or attempted to collect Perino and Leitao's debt in an unfair, deceptive, and unreasonable manner as described above and as incorporated by reference.

57. Accordingly, Defendants are liable to Perino and Leitao for violations of G.L. c. 93, § 49.

## COUNT III
## VIOLATION OF MASSACHUSETTS
## DEBT COLLECTION REGULATIONS
### 940 C.M.R. 700, *et seq.* and 209 C.M.R. 18.00 *et seq.*
(MEFA, Zwicker)

58. The preceding allegations are hereby incorporated by reference.

59. The Massachusetts Attorney General and Division of Banks have promulgated regulations prohibiting unfair or deceptive acts or practices in the collection of debts against Massachusetts residents, 940 C.M.R.7.00, *et seq.* and 209 C.M.R. 18.00, *et seq.*, respectively.

60. MEFA and Zwicker are "creditors" as defined by 940 C.M.R. 7.03 and 209 C.M.R. 18.02.

61. Perino and Leitao are "debtors" as defined by 940 C.M.R. 7.03 and "consumers" as defined by 209 C.M.R. 18.02.

62. The account is a "debt" as defined by 940 C.M.R. 7.03 and 209 C.M.R. 18.02.

63. Defendants collected or attempted to collect Perino and Leitao's debt in an unfair, deceptive, and unreasonable manner as described above and as incorporated by reference.

64. By claiming that Perino owed MEFA more than $164,000, and by claiming that Joseph Perino and other family members were also obligated on Perino's accounts and that she should contact them and ask them to pay the debts on her behalf, Zwicker engaged in unfair and deceptive debt collection practices by

making knowingly false and misleading representations as to the amount and status of the debt, in violation of 940 C.M.R. 7.07(2) and 209 C.M.R. 18.16(2,10).

65. By failing to provide Perino with information and documentation of the debt pursuant to her request, Zwicker and MEFA committed unfair and deceptive acts in violation of 940 C.M.R. 7.08(1).

66. By failing to credit Perino's payment to her accounts, but instead filing a lawsuit against Perino and Leitao which misstated the amount in controversy, MEFA and Zwicker engaged in knowingly unfair and deceptive debt collection practices, in violation of 940 C.M.R. 7.07(2), 940 C.M.R. 7.07(8), 940 C.M.R. 7.07(16) and 209 C.M.R. 18.16(2) and 209 C.M.R. 18.16(10).

67. Accordingly, Defendants are liable to Perino and Leitao for the above-described violations.

68. As described above and incorporated by reference, Perino and Leitao have been damaged by MEFA and Zwicker's unfair, deceptive and unlawful debt collection practices.

**REQUEST FOR RELIEF**

WHEREFORE, Perino and Leitao respectfully request that this Honorable Court grant the following relief:

a) Judgment in the Plaintiffs favor and against Zwicker on all counts of the Complaint;

b) Statutory damages of $1,000;

      c)      Actual damages sufficient to compensate Plaintiffs for economic loss, and physical and emotional distress damages;

      d)      An order awarding Perino and Leitao their costs and attorney's fees; and

      e)      Any other relief that they may be entitled to, at law or in equity.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiffs,
Alexandra Perino and Susan Leitao,
By counsel,

/s/ *Kristin L. Thurbide*
Joe Culik (BBO #672665)
Kristin L. Thurbide (BBO #694840)
CULIK LAW PC
101 Federal St., Suite 1900
Boston, MA 02110
(617) 830-1795
jculik@culiklaw.com
kthurbide@culiklaw.com

February 7, 2020